UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLANCA WATKINS, SPENCER HOYT, individually, on behalf of other similarly situated individuals, and on behalf of the general public,<br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>HIRERIGHT, INC.,<br><br>　　　　　　　　　Defendant. | Case No. 13-cv-1432-BAS-BLM<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[ECF No. 141]** |

On May 24, 2013, Plaintiffs Blanca Watkins and Spencer Hoyt commenced this class action in San Diego Superior Court, alleging that Defendant Hireright, Inc., a consumer reporting agency, violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., by failing to provide consumers with full-file disclosures despite written requests to do so. (ECF No. 1.) Thereafter, Defendant removed this action to federal court. (*Id.*) On September 19, 2014, at the parties' joint request, Plaintiff Blanca Watkins and her individual claims were dismissed from the case. (ECF No. 101.)

On January 30, 2015, the parties filed a joint motion for preliminary approval of class action settlement. (ECF No. 119.) On February 11, 2015, Defendant filed a Notification of Bankruptcy with this court, staying all matters before the Court. (ECF

No. 122.) Hence, the Court terminated the joint motion for preliminary settlement approval. (ECF No. 124.)

After Plaintiff's counsel reached an agreement with Defendant's bankruptcy counsel in connection with Hireright's plan of reorganization to assume the agreement post-bankruptcy, the Court reinstated the joint motion for preliminary approval of class action settlement. (ECF No. 130.) According to Plaintiff's counsel, "[t]he assumption of the settlement agreement has been incorporated into the bankruptcy court's confirmation order." (ECF No. 125.) The Court thus granted the motion for preliminary approval of the settlement. (ECF No. 130.)

Now pending before this Court is Plaintiff's motion for final approval of class action settlement. (ECF No. 141.) The matter came on for hearing on September 19, 2016. (ECF No. 149.) The Court has considered the proposed Class Action Settlement Agreement ("Settlement" or "Settlement Agreement," ECF No. 119-3) filed in conjunction with the joint motion for preliminary approval of class action settlement, oral and/or written objections and comments received regarding the proposed settlement, the record in the above-entitled lawsuit ("the Action"), and the arguments and authorities of counsel. For the reasons stated below, the Court **GRANTS** this Motion. (ECF No. 141.)

I.  **PROPOSED SETTLEMENT**

The proposed Settlement Agreement applies to class members ("Class" or "Class Members") defined as "all individuals for whom Hireright's records indicate that the individual made a request for information from the consumer's file from May 23, 2008 through the date of preliminary approval." (Settlement Agreement § 24.)[1]

---

[1] The Settlement Agreement is attached to the Declaration of E. Michelle Drake in Support of Motion for Preliminary Settlement Approval (ECF No. 119-2) as Exhibit 1 (ECF No. 119-3). All capitalized terms in this Order shall have the same meanings as set forth in the Settlement Agreement. (Settlement Agreement §§1-27 (Definitions).)

The Settlement required Class Members to return a properly completed Claim Form within the Claims Deadline to be eligible for monetary relief. (Settlement Agreement § 29.)  Completed Claim Forms had to be postmarked no later than 60 days after mailing of the Class Notices.  (*Id.* § 48.)  Hireright has established a common fund of $460,000, exclusive of attorneys' fees and costs of administration. (*Id.* § 43.)  This fund will be distributed *pro rata* to all Class Members. (*Id.* §§ 45, 65, 67.)  Although individual payouts are capped at $200.00, at this point, given the high number of claimants, the settlement amount per individual claim will be $25.02. (Supplemental Declaration of Kelly Kratz Regarding Notice and Settlement Administration Activities Completed as of September 19, 2016 ("Kratz Decl. 9/19/16").)[2]

The Settlement Agreement also anticipates that the Class Members receive Injunctive Relief as reflected in the Injunctive Relief Order.  (Settlement Agreement, Ex. E.)  On all reports pertaining to a consumer who was adjudicated by Hireright, Hireright will include the following on the report (both on the consumer copy and the file disclosure copy, if any):

(1) The final adjudication status for the report;

(2) If an email notification was sent communicating that adjudication status to the customer, an "Activity Log" or similarly designated section of the report, stating the fact that an email was sent and the date of the email; and

(3) The following statement:
> "Email notifications, if configured, were sent by Hireright to the user who requested this report (identified in the 'Recipient' column of the report Activity Log).  Such notifications may indicate whether the background report satisfies certain criteria established by the user as displayed in the 'Result' column of the report Activity Log."

(*Id.* ¶ 2.)

---

[2] This Supplemental Declaration was presented to the Court at oral argument.

## II. ANALYSIS

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). Before granting approval of a class-action settlement, the Court must first determine whether the proposed class can be certified. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

For the reasons outlined in the Court's Order Granting Joint Motion for Preliminary Approval of Class Action Settlement (ECF No. 130), the Court concludes that class certification under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure is appropriate in this case.

The Court further finds that the Proposed Settlement is "fair, adequate and reasonable" under Rule 23(e) of the Federal Rules of Civil Procedure. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.*

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon*, 150 F.3d at 1026. Consequently, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Other relevant factors to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, as outlined in the Court's Order Granting Preliminary Approval of the Class Action Settlement (ECF No. 130), the parties' Settlement Agreement complies with all of these requirements.

The Court previously approved the form and manner of notice to the class members. (ECF No. 130.) The Court now finds the Class Notice program was executed as previously detailed in its Order. (Declaration of Kelly Kratz Regarding Notice and Settlement Administration Activities Completed as of August 26, 2016, at ¶¶ 4-6 ("Kratz Decl. 8/26/16"), ECF No. 144-4.) Class notice was delivered to approximately 298,318 class members via mail. (Prakash Decl. #1 ¶ 3.) Approximately 2% of these were returned as undeliverable with no forwarding address. (*Id.*) The claims administrator, Dahl Administration, LLC ("Dahl") also maintained a hotline and settlement website for class members. (Prakash Decl. #1 ¶ 4.) Hence, the Court finds the class notice satisfies due process.

//

//

//

Dahl received 18,381 valid and timely claims from Class Members. (Kratz Dec. 9/19/16 at ¶4.) Given that there were 298,318 Class Members, the claims rate is 5.9%. (*Id.*)

Seven objections have been voiced. (Prakash Decl. #1 Exs. D – I, ECF Nos. 141-6 to 141-11; Declaration of Anna P. Prakash in Support of Reply ("Prakash Decl. #2") Exs. 1, 2, ECF Nos. 144-2, 144-3.) None of these complied with the Court's Preliminary Order, and thus the objections are technically waived.[3] Nonetheless, the Court addresses all concerns expressed by these individuals.

First, many of the objectors fail to understand the limited scope of the lawsuit and the Settlement. Several of them appear to have other grievances against Defendant Hireright not addressed in this lawsuit. For example, Mr. Lucas complains that Hireright was over-inclusive in the information it sent out (going back twenty-five years and including his conduct as a juvenile), ran repeated credit checks leading his credit score to drop, and left the sex offender section blank. (Prakash Decl. #1 Ex. E). Similarly, Mr. Blasco complains that Hireright reported false information and had no system for him to dispute this incorrect information. (Prakash Dec. #1 Ex. F.) Mr. Williams objects that information Hireright has on file with respect to an alleged alias "is misleading and incorrect." (Prakash Decl. #1 Ex. H). And Mr. Mulbach, although his 75-page objection is largely unintelligible, appears to be objecting that Hireright set "arbitrary standards to justify treating candidate unfairly, or maybe like second class citizen. The provisions of unequal or inferior services, benefits, or activities . . . Use of screening criteria that do not correlate and have a disperate impact. [sic]" (Prakash Decl. #2 Ex. 1.)

//
//
//

---

[3] Six of the seven objectors failed to docket their objections with the Court, one of the objectors filed his objection late, and one of the objectors failed to serve all counsel in this matter.

None of these grievances is waived by this current lawsuit, and, in fact, if the objectors wish to pursue further legal action against Hireright, they may do so.[4] This case involves only the narrow allegation that Hireright failed to provide consumers with full-file disclosures despite written requests to do so. (ECF No. 1.) Therefore, to the extent the objectors claim that Hireright provided false information to the employers seeking their information, that is not the subject of this lawsuit, and the objections on those grounds are overruled.[5]

Second, Ms. Dimarzo indicates that she thinks Hireright may not be responsible for the conduct alleged. She expresses concerns about other companies, not parties to this action, who may be violating the FCRA, and she is concerned "Hire-right [may be a] scapegoat for some bigger company." (Prakash Decl. #1 Ex. D.) Because this is a negotiated settlement and Hireright has agreed to accept responsibility for the allegations, the Court overrules this objection.

Mr. Rucker objects to the cy pres distribution (Prakash Decl. #1 Ex. G), an objection that appears to be moot. Because there are so many claimants, all funds will be distributed to class members and there will be no remainder to a cy pres recipient. Hence, his objection is overruled. Similarly, Mr. Ray objects to the fact that the award

---

[4] However, the Court notes that any litigant will face the additional hurdle of Hireright's bankruptcy. According to Class Counsel, under Hireright's bankruptcy plan, general unsecured creditors will receive a share of a pool of $1.25 million that will only be distributed when all claims in the class have been resolved. The exact amount that each unsecured creditor will receive is uncertain and will depend on a lengthy claims reconciliation process that could take several years to reach resolution. (Supplemental Memorandum in Support of Preliminary Approval, ECF No. 125 at 4; Declaration of Anna P. Prakash in Support of Motion for Final Approval of Class Certification, ("Prakash Decl. #1") ¶ 7, ECF No. 141-2.)

[5] Although the Settlement Agreement provides that Class Members will release their claims, the release applies only to claims "arising pursuant to 15 USC § 1681g and/or 1681b (where the sole basis for the claim under § 1681b stems from the Released Parties' failure to include an Adjudication Notification Email or other system-generated email)." (Settlement Agreement § 68.) Thus, the release "does not affect and Settlement Class Members shall retain the right to bring individual claims for actual and/or punitive damages and/or equitable relief under any section of the FCRA other than § 1681g and 1681b (where the sole basis for the claim under § 1681b stems from the Released Parties' failure to include an Adjudication Notification Email or other system-generated email)." (Settlement Agreement § 70.) "The Settlement Class Release shall also not release any Pending Unrelated Claims." (Settlement Agreement § 72.)

is capped at $200 per class member (Prakash Decl. #2 Ex. 2), but in light of the high number of claimants, the cap will not come into play and therefore his objection is similarly overruled as moot.

Finally, several of the objectors state they believe the attorneys' fees awarded are too high. These objections will be addressed in the Court's order awarding attorneys' fees filed simultaneously with this order.

Although the settlement may not be perfect, the Court finds it is fundamentally fair, given the harm that was alleged. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("[T]he question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court.").

## III.   CONCLUSION

For the reasons stated both in this Order as well as its previous Order Granting Preliminary Approval of the Class Action Settlement, the Court **GRANTS** the Motion for Final Approval of Class Action Settlement (ECF No. 141).

The Court **ORDERS** as follows:

1. The Judgment incorporates by reference the definitions in the Settlement Agreement, including its exhibits, and all terms used herein shall have the same meanings as set forth in the Settlement Agreement;

2. The Court has jurisdiction over the subject matter of this Action and all Parties to the Action, including all Settlement Class members;

3. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certifies the following Class for settlement purposes: "all individuals for whom Hireright's records indicate that the individual made a request for information from the consumer's file from May 23, 2008, through the date of preliminary approval." Pursuant to Rule 23(c)(3) of the Federal Rules of Civil Procedure, all such persons who satisfy the Class definition above, except those Class

Members who timely and validly excluded themselves from the Settlement Class, are Settlement Class Members bound by this Judgment.

4. Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, the Court finds that the named plaintiff in this Action, Spencer Hoyt, is a member of the Settlement Class, his claims are typical of the Settlement Class, and he fairly and adequately protected the interests of the Settlement Class throughout the proceedings in the Action. Accordingly, the Court appoints Spencer Hoyt as Class Representative.

5. The Court finds that the Settlement Class meets all requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for certification of the class claims alleged in the Complaint, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the Class Representative and Class Counsel; (e) predominance of common questions of fact and law among the Class; and (f) superiority;

6. Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, the Court finds that Nichols Kaster PLLP and the Law Offices of Devin H. Fok have fairly and adequately represented the Class for purposes of entering into and implementing the Settlement, and, thus, appoints these entities/individuals as Class Counsel for the Settlement Class;

7. In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, the Claims Administrator caused the Class Notice to be disseminated as ordered. The Class Notice advised Class Members of the terms of the Settlement, of the Final Approval Hearing, and their right to appear at such hearing, of their rights to remain in or opt out of the Settlement Class and to object to the Settlement, procedures for exercising such rights, and the binding effect of this Judgment to the Settlement Class;

8. The distribution of the Class Notice constituted the best notice practicable under the circumstances, and fully satisfies the requirements of Rule 23 of the

      Federal Rules of Civil Procedure, the requirements of due process, 28 U.S.C. § 1714, and any other applicable law;

9. The Settlement proposed by the parties is fair, reasonable and adequate. The terms and provisions of the Settlement are the product of lengthy, arms-length negotiations. Approval of the Settlement will result in substantial savings of time, money, and effort to the Court and the parties, and will further the interests of justice;

10. Thirty-six Class Members have timely or validly submitted requests for exclusion from the class. Therefore, all Settlement Class Members, with the exception of these thirty-six individuals, are bound by this Judgment and by the terms of the Settlement. The individuals who have opted out of this Settlement are attached to this Order as **Exhibit A**.

11. The Court awards attorneys' fees, costs and an incentive service award to Spencer Hoyt as set forth in the Order submitted simultaneously with this Order;

12. The Court dismisses with prejudice the Action and all released claims set forth in the Settlement Agreement;

13. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement;

14. There is no just reason for delay in the entry of this Final Judgment and Order approving Settlement and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**DATED: September 30, 2016**

Hon. Cynthia Bashant
United States District Judge

## Exhibit A
## Opt-Out List

1. 
2. 
3. TIM RAY
4. ANN LUNDSTROM
5. DANNY THOMAS
6. JERRY MCINTOSH
7. TIM KROGEN
8. DANNY RUTH
9. BENJAMIN DUNN
10. RICHARD BRYANT
11. WILLIAM MOORE
12. KELLY EVERETT
13. ANTHONY BRUCKS
14. RONALD MAITEKI
15. SEYED SAFDARNEJAD
16. CALEB MCKEAN
17. LYNNEA ROTH
18. MARSHALL DYSON
19. LATASHA TAYLOR
20. PARTHASARATHY SRINIVASAN
21. GEORGE KITCHING
22. GREGORY DIPIETRO
23. JEFFREY HOEFLICKER
24. GREGORY CONSTANTINE
25. YIMINQI
26. EARL BRANHAM
27. JOHN PHALAN
28. JOHN MCCUEN

1. CHRISTINE TONGE
2. BRUCE DISTAFINO
3. ROBERT MARKHAM
4. KENNETH LENK
5. STEVEN BUSHMAN
6. ISMAIL RAWOOF
7. YAHIA CHEHADEH
8. MARVIN MCWRIGHT
9. IVAN GUDEV
10. ROBERT CLARKE